Good morning, Your Honor. My name is Saad Ahmed, and I represent the petitioner. The petitioner in this case is a native and citizen of El Salvador, and she seeks review of the board's final order of removal, in which the board reversed the immigration judge's grant of asylum to petitioner on the ground that the petitioner, whose father was murdered by gang members and testified in open court against those gang members, was not a member of a particular social group. The board concluded that the social group offered by the petitioner was not socially visible in Salvadorian society, lacked particularity, was too amorphous, and therefore was not a discrete social group under the Immigration and Nationality Act. The board's decision should be reversed for three main reasons. The first reason is that the board did not provide a reasonable explanation for its decision. The board did not explain why the social group offered by the petitioner lacked social visibility, as well as the particularity requirements. Secondly, the social group offered by the petitioner in this case, people who testify against gang members in open court, are members of the social group under the board's presidential decision in matter of ACOSTA, because they shared a past experience which is now fundamental to their identity. This group also satisfies the social visibility requirement, as well as the particularity requirements. And finally, Your Honors, the board erred as a matter of law in not deciding the petitioner's claim that she also feared returning to El Salvador on account of her imputed political opinion. The board ignored this issue, even though it was properly raised in the petitioner's brief with the board. Scalia, what political opinion are we discussing? Her opposite, her imputed opposition to the gang members. Her testimony in court would be characterized by the gang members as imputed political opinion. We have cases, don't we? Yes. Can we, in fact, say that somebody who is opposing a gang is not a member of a social group for purposes of the statute? Yes. Your Honor, even there are board decisions on this issue. No, we have the Ninth Circuit decision. That's correct. A matter of ‑‑ excuse me. It's Soriano v. Holder and Valesco v. Holder, the two decisions in the Ninth Circuit. But we believe that those decisions do not stand for the proposition that people who are material witnesses or informants are categorically, it means in all cases, are barred from establishing a particular social group. We believe that those cases were, you know, were based on the facts of those cases. I mean, this is a far cry from a situation where a person openly comes to court and testifies in court against the people who murdered her father versus people in those two cases who were basically ‑‑ who turned against the people with whom they were engaging in criminal activity, Soriano. But the fact that someone testifies doesn't make that person a member of an identifiable social group. Yes. The thing is, Your Honor, as all courts of appeals in the United States have come to conclude, that it's difficult to establish a particular social group. It's hard to come up with a definition of a particular social group. But you didn't say of all people who ‑‑ Therefore ‑‑ You can't. But you can't say that somebody who has had a ‑‑ everybody who has had a similar experience is a member of a social group. That's ‑‑ That can be if that experience is fundamental to the group's identity. However, as the Seventh Circuit recently, and I believe Judge Ripple was in that case, in Gattini versus Holder, sometimes a shared past experience being such as a former membership in an organization can be so fundamental to a group's identity that that trait is almost immutable. I want to come back to this issue of social visibility. That's a membership in an organization. But ‑‑ We are not saying ‑‑ All people who have been hit by a car is not a social group. Right. Well, we are not saying that every person who was a material witness or who, you know, is going to qualify for a social group treatment. But I think in this case, you have to look and you have to make a case-by-case analysis. Well, what's the closest case? I think the closest case in this case would be matter of CA, which is the board's decision. Matter of CA, the court ‑‑ the board said that informants were not members of a particular social group. And they also said in that case that because if you're noncriminal informants, nobody knows you. You know, you're not socially visible. And they also mentioned, well, things may be different if you had come to court and had testified in court. So I think that makes this case very different from the other cases where this court as well as the board have held that this, you know, that the group fails to satisfy the social group analysis. I think in this case, by going to court, in open court, she is socially very visible, even though Seventh Circuit Court of Appeals has rejected the, you know, the superficial ‑‑ I mean, you know, the social visibility test in a superficial sense. But even if you have to look at it from that point of view. Well, Judge Posner in Ramos in the Seventh Circuit rejected social visibility because it doesn't mean anything. That's correct. A sentiment with which I commune. That's right. But he also held that members of Mara Salvatrucha are a particular social group. And he granted asylum in Ramos v. Holders, I remember. Well, he said former members. Former members. Former members. Yes. If a former member is a member of a social group, somebody who does an act against that group, which in Acosta's words is a shared past experience, right, that also identifies that person, at least for purposes of the Mara Salvatrucha. There's a lot of social visibility as far as a snitch is concerned. That's correct. So do you think that if we were to deny your petition for review, we would be somewhat in tension with the holding by Judge Posner in Ramos v. Holder and Crespin Valladares v. Holder in the Fourth Circuit? I would say yes. That's a very interesting question. That's a very interesting question. Thank you. I think the question comes down to the same issue, the difficulty in defining the social group. I think what the Board is trying to do is it's trying to make it, you know, it does not want any person to come up and say I'm a member of a social group. They want to define it more narrowly. And I think in this case. In the closest case you have the Crespin Valladares group where there's a family who has received death threats because one of their relatives testified against MS-13. That's right. And in the Fourth Circuit, that was considered to be membership in a social group. If the family is of somebody who testifies, is a member of a social group, isn't it sort of a fortiori the person testified, part of that social group? That's correct. I did a 28-J letter on this. Unfortunately, hindsight is 20-20. I would have raised this argument at an earlier level, at the lower court level. The attorney who represented the Petitioner at the lower court level did not make that argument, did not make the family as a social group argument. So I do understand that the social group that my client offered is not the same social group as offered in the Fourth Circuit, but the facts of the case are strikingly similar. I think they're strikingly similar because there is no clearer social group than family. Nuclear family is probably the most clear social group there is. All courts have said that. If you go down to 850 Bryan Street, persons who testified against suspected criminals are segregated. They're sure seen with social visibility as a separate group. That's correct. That's correct. But I would like to say that, therefore, we have to look at the facts of each case, the Suriano and the Valesco cases. I think their holdings were narrowly tailored to the facts of those cases. I believe that those cases do not stand for the proposition that people who testify against gang members in open court can never be classified as members of a social group, even the board. Well, Suriano wasn't. They were ex-gang members. They weren't testifying against gang members. Yeah, that's right. In Suriano. In Valesco, the woman testified against the person who smuggled her into the United States. But, yes, there are factual differences in the two. I would like to say that in this case, because the social group analysis is an evolving definition, and the board did not provide a reasonable explanation as to the image – basically the board gave a conclusionary decision saying that, well, she opposed gangs, gang members are not – you know, we have already rejected that in matter of SEG, the same holding. They did not provide an explanation as to why the – why my client, the Petitioner's facts were not the same or why the facts were similar. In this case, the Petitioner did not claim that she fears returning to El Salvador because she opposes gang members or she opposed gangs. Her social group is more narrowly tailored. In this case, people who testify in court against gang members. And we can even make it narrower that family members of people who were murdered and who testified in court against them. And if there are other questions, I'll take rebuttal. Thank you. Thank you. You may. Thank you. Good morning. Jeffrey L. Mencken, United States Department of Justice for the Attorney General. May it please the Court. Our position is that controlling court precedent precludes the Petitioner's claim that she belonged to a protected social group consisting of witnesses against a criminal gang. In fact, the Court's holding in Velasco last year, I believe, is on all fours here and pretty much sets the outcome. And if there was any doubt of that. You mean Velasco was categorical? Well, it set the foundation that witnesses are not a social group and it's been defined in at least four decisions that we sent the Court a Rule 28J letter, the most recent of which is in March that said being a witness to a murder does not establish the required nexus to the protected ground. That's Herrera-Grande. I think the most pertinent one of the four cases that we sent was Garcia-Lieva, which was decided in September of last year, which says in which a person who was actually violently attacked as a result of having testified was found not to be a member of a social group consisting of witnesses. If we accept that it is a categorical rule or at least a very broad rule, how do you distinguish the Fourth Circuit's opinion in the Cressman case? Well, we do so in our rebuttal letter to the 28th. Well, tell me. Well, the way that it's the Fourth Circuit does my work for me, actually, because the Fourth Circuit specifically said that the social group that it was defining does not extend to the witnesses themselves. They said so very, very clearly at page 125 of their opinion. Now, they made an exception for me. Is that logically pulled up? I don't think it does, only because of this. I think if the individual is not entitled to social group protection, I don't think a family member benefits. So I think the entire decision of the Court has a flaw in it. But the question is, does it make clear, I'm looking at it, but that the individual would not, is that your reading of it is that the group is the family and that the individual and other similarly situated individuals would not be a group? The Court said so. It very expressly stated that the social group did not extend to witnesses themselves. And the quote is, the Crispin's proposed social group excludes persons who merely testify against the gang. So the decision was based on family membership, which I don't think is defensible in and of itself, but that's neither here nor there, because we are talking about someone who themselves testified and the Fourth Circuit was careful to carve out that they were not going there. And where does that leave us with this case? That leaves us with Ninth Circuit precedent, Your Honor. And that is that witnesses themselves are not a protected group. Informants themselves are not a protected group. There was a decision last month, the Ayala decision, and I've got the site if the Court would like, where a police officer was shot for having arrested a particular drug dealer, and the finding there was retribution for a particular act in a criminal case is not itself make you a member of a social group. And that was Ayala v. Holder decided May 19th. And I apologize for not ‑‑ I can send the Court a follow-up letter if you like. But what we've got is the lack of a definable ‑‑ what the Board said here was the group is too amorphous, and that is consistent with Ninth Circuit case law. And, of course, we're here on de novo review. And for that reason, this case is no different. Do you have any light to shed on what the content of social visibility or particularity ought to be as applied to this case? I read the Court's decision, Your Honor, more along the lines of the second part of the test is whether the group is definable. And maybe they're part of the same inquiry. But here the Board found that the concept of witness is too amorphous. In Soriano ‑‑ But witnesses against the MS-13, is that amorphous or is that particular? Well, it's amorphous. I mean, you are aware, are you not, that in Salvador, at least the Salvadoran government thinks that witnesses who testify against MS-13 are entitled to a witness protection program. And they've enacted legislation along that line. So social visibility means visibility by the community, and the community means the people in Salvador. Because that's where she's going to be knocked off. Doesn't that have some effect? The fact that they're seen as a group that needs protection in Salvador? My answer is twofold, Your Honor. First, the Petitioner didn't raise that argument in their brief, although it was before the Board. So I don't think it's raised. Secondly ‑‑ It's a fact in the case. Yes. But by the same token, I don't think foreign ‑‑ the distinct foreign statute would govern what defines a social group in this instance, especially when ‑‑ Evidence of what the social visibility of the community might be. Well, yes. And the issue here is cohesion. What the Court said in Suriano, that it's not a cohesive, homogeneous group, that anyone in any demographic description falls into that. And it's a past shared experience. Isn't that exactly what Acosta said? We're talking about a shared characteristic. It might be former military leadership. Anybody can be a military leader if he's good enough. Or land ownership. Anybody can own land. So that doesn't really distinguish people that anybody can be a witness. I mean, although that language is in Velasco, and I have to give it to you. Yes, and I would stand on that, that there's no reason for the Court to so soon after to turn back, to start over again. There's a clear line going from informants to witnesses that ends in this case, and I think is decisive. You would not suggest that somebody who's in a witness protection program is a member of a social group? I would not, Your Honor. No. Let me ask you this question, which is a little bit at a different level of abstraction. I'm struck by the different interpretations that are given to the phrase particular social group by different courts, including the BIA. As a matter of statutory analysis, if we were writing on a clean slate and not bound by our prior precedent, if it is binding, would you agree with me that this phrase is somewhat ambiguous and entitled to Chevron deference? Yes, and the Court has said as much, deferring to the Board's definition of that and application. Then if it's entitled to Chevron deference, shouldn't we read Acosta as the BIA's determination of what particular social group means? And it has broad categories, persons who share a common immutable characteristic. It's immutable, and it's a common characteristic that this person testified against MS-13. That's immutable. What I would say, Your Honor, is that the Board, since Acosta, has further defined the issue in SEG and AEG and CA, so that in this case, the Board very properly relied on SEG. In Soriano, the Court very properly relied on SEG. Do you agree that having taken an action, that having chosen to take an action makes a characteristic immutable? No, I don't think it does, because just because something happened and it can't then unhappen does not make it an immutable part of your character. It's not innate. It's not fundamental. It's something that happened to you that may happen to other people, any more than being a convenience store clerk and getting robbed is now an immutable characteristic. But the Court, as many have held, is that being a crime victim does not make one a member of a particular social group. So because something happened, I don't think makes that an immutable part of your soul, for lack of a better term. Judge Posner thinks that veterans, people who serve in the service, are a particular social group. Do you agree with that? That takes me rather far afield from the record and could get me in a lot of trouble at home. He used that in his case. I don't think that it alters the Board's decision in this case on review. One quick thing that I would like to get to while my time is winding down is that the political persecution claim is not before the Court. There's nothing in the Petitioner's argument before the Board that raised the issue. Their issue was confined entirely to the witness as social group argument. There's no legal argument. You can't point to one passing reference in a statement of facts and say, I've raised this issue, now you must decide it. If the Petitioner wished that issue to be preserved, then it should have been properly raised, and it's not before the Court. And even if it's deemed properly raised, the Supreme Court in Elias Sicarius said that opposing a gang is not a political opinion, so I think that ends it both ways. But unless the Court has any further questions, I would just wind up to say that the Board's finding here was correct, and the petition for review should be denied on that ground. Thank you, Your Honor. Mr. Allman, how do we get around Velasco-Cervantes? We come around Velasco-Cervantes by the fact that the holding in that case was narrowly tailored to the facts of this case. In Velasco, the Court held that the holding in that case was narrowly tailored to the facts of this case. In that case, while being a witness against any person will not satisfy, rightly, the Court rightly concluded, would not satisfy as a particular social group, because you are a witness against anybody. There are thousands of people who testify against people. But he was a material witness for the government. Like in a case against another person, but that's, you have to look at the context in which the witness gave the testimony. But, I mean, giving, I mean, opposing gangs or testifying in open court against a gang member or gang members in a country plagued by gang violence is a far cry. Who did he testify against in Velasco? The person who brought her, who smuggled her into the United States and who told her not to tell anybody about it. That's a far cry. I mean, that's not the same situation where a person bravely and courageously goes to court and testifies against a person who murdered her father, gang members. But isn't a witness in Velasco testifying against a smuggler who may be a member of a group of coyotes who smuggle people across? But that's too speculative. I think that That wasn't in that case? No. There wasn't any gang? That's right. It was too speculative. I would like to just answer Judge Ripple's question as to how, I mean, to explain the difference in the Fourth Circuit case in this case. I think there are no, I think it's very similar. In the Fourth Circuit, Fourth Circuit said that people who oppose gangs or testify against gangs and their family members are targeted as a result, are members of a social group. In this case, her father had opposed gangs. The record shows that he had problems going back with the gangs for several years and then finally they murdered him. And as a result, my client was targeted. So there are no differences, even though my client went to court, unlike the Fourth Circuit case. No differences in the facts between that case and this case. And I also think that Judge Bea rightly offered an example that people who are under witness protection program have a lot of social visibility. Salvadorian society thinks they have social visibility, and we properly raised this issue in our brief. Before we get back to Judge Ripple's question, do you disagree with the citations that counsel for the government has made of the Fourth Circuit case that although family members constitute the group, witnesses against MS-13 are not part of a social group? Yeah. I mean, I would disagree with it because That's what they said. Yes. That's right. I would disagree with it because in that case, I think the situation was reversed. The situation was reversed. He testified against gang members in the Fourth Circuit, and then his family members were targeted. In this case, family member was targeted, and she testified against. It's the same. It's basically circular. This argument is circular. I don't think there's any difference between the two. Were any other family members either witnesses, or did they appear as witnesses? One of his sisters appeared, and she's also in the United States. She was also targeted by gang members. One of whose? One of my client's sister. One of your client's sister. Yes. And she's living in Virginia. And if there's no questions, I'll rest my case. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Ripple, Bea